IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUKE J. SULLIVAN, III, individually and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No. 16-203 |
| Plaintiff, | ) ) ) | United States District Judge |
| v. | ) ) | Mark R. Hornak |
| ALLIED INTERSTATE, LLC, and JOHN DOES 1-25, | ) ) ) | United States Magistrate Judge |
| Defendants. | ) ) | Cynthia Reed Eddy |

## REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, United States Magistrate Judge**

### I.    RECOMMENDATION

This is a putative class action initiated under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, alleging that Defendant, Allied Interstate ("Defendant"),[1] violated the FDCPA by engaging in deceptive and misleading debt collection practices when it sent Plaintiff a collection letter offering to settle a time-barred debt, but failed to disclose that said debt was unenforceable.   Pending before the Court is Defendant's motion to dismiss Plaintiff's amended putative class action complaint ("amended complaint") for lack of subject matter jurisdiction and for failure to state a claim.[2]   (ECF No. 4).   For the reasons that follow, it

---

[1]  Although Plaintiff anticipates the addition of some twenty-five defendants to this action, Allied Interstate remains the only named defendant at this time.  Thus, the Court will hereafter refer to Allied Interstate as Defendant.

[2]   Defendant filed this motion as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil procedure despite the fact that an answer has not been filed in this case.  A motion for judgment on the pleadings is only appropriate, however, where the pleadings are closed, Fed.R.Civ.P. 12(c), which cannot occur before an answer is filed with the Court, see Fed.R.Civ.P. 7(a)(2).  Thus, the Court will construe this pending motion as a motion to dismiss under Rules 12(b)(1) and 12(b)(6). See Walker v. Williams, 2015 WL 4931794, at *2 (E.D. Pa. Aug. 17, 2015).

is respectfully recommended that Defendant's motion be granted, and that the amended complaint be dismissed with prejudice.

## II.     REPORT

### A.     Factual Background

The following factual allegations are taken from the amended complaint, (ECF No. 2), the operative pleading herein.

At some point prior to February 25, 2011, Plaintiff incurred a debt from Citibank USA. Id. at ¶¶ 10, 15.  Plaintiff subsequently defaulted on this debt, at which point LVNV Funding, LLC ("LVNV"), acquired the debt from Citibank.  Id. at ¶ 11.  On February 25, 2015, Defendant sent a collection notice ("the letter") on behalf of LVNV to Plaintiff in an attempt to collect a portion of the debt.  Id. at ¶ 12, Exhibit A.  The letter stated the following:

> We are a debt collection company and we have been retained on behalf of LVNV Funding LLC to collect the debt noted above. This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> LVNV Funding LLC is willing to accept payment in the amount of $2,905.16[3] in settlement of this debt. You can take advantage of this settlement offer if we receive payment of this amount or if you make another mutual acceptable payment arrangement within 40 days from the date of this letter. We are not obligated to renew this offer.
>
> To make a payment, please telephone us at 877-677-7371 or mail your payment using the coupon on the reverse side of this letter. We process checks electronically and your checking account will be debited on the day we receive your payment. Your check will not be returned.
>
> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

---

[3]     In the subject line, the letter states that the amount owed was $29,0151.64.  Thus, the amount that Defendant tried to collect constitutes 10% of the total alleged debt.

> We will forward to receiving your payment.
>
> Sincerely,
> Allied Interstate LLC

Id. at ¶ 14 & Exhibit A (emphasis added).  The reverse side of this letter stated:

> Federal and state laws prohibit certain methods of debt collection, and require that
> we treat you fairly. You can stop us from contacting you by writing a letter to us
> that tells us to stop the contact. Sending such a letter does not make the debt go
> away if you owe it. Once we receive your letter, we may not contact you again,
> except to let you know that there won't be any more contact or that we intend to
> take a specific action.
>
> If you have a complaint about the way we are collecting this debt, please write to
> us at PO Box 361445, Columbus, OH 43236, email us at
> advocacygroup@alliedinterstate.com, or call us toll-free at 800-811-4214 between
> 9:00 A.M. Central Time and 5:00 P.M. Central Time Monday - Friday.
>
> The Federal Trade Commission enforces the Fair Debt Collection Practices Act
> (FDCPA). If you have a complaint about the way we are collecting your debt,
> please contact the FTC online at www.ftc.gov; by phone at 877-FTC-HELP; or by
> mail at 600 Pennsylvania Ave., NW, Washington, DC 20580.

Id.

Plaintiff incurred the at-issue debt more than four years before Defendant sent the letter.

Thus, Plaintiff claims that the debt was barred by Pennsylvania's statute of limitations at the time

that Defendant sent Plaintiff the letter.[4]  Id. at ¶ 15.  The letter did not disclose to Plaintiff that

his debt was time-barred and unenforceable, a warning Plaintiff argues is required under the

FDCPA.  Id. at ¶ 20.

### B.   Procedural History

Plaintiff commenced this action on February 24, 2016, by filing a putative class action

complaint in this Court.  (ECF No. 1).  On March 22, 2016, Plaintiff filed the operative amended

complaint.  (ECF No. 2).  In the amended complaint, Plaintiff alleges that Defendant violated the

FDCPA through its participation in deceptive and misleading debt collection practices.

---

[4]   See 42 Pa.C.S. § 5525.

Specifically, Plaintiff claims that by offering a "settlement" and a "settlement offer" of a time-barred debt, Defendant intentionally misled Plaintiff into believing that his debt was still legally enforceable.

Defendant responded by filing its motion to dismiss and brief in support thereof, (ECF Nos. 4, 5), wherein Defendant claimed that no violation of the FDCPA had occurred on its part. In furtherance of this assertion, Defendant argued that offering a Plaintiff a settlement of a time-barred debt was not misleading or deceptive under the FDCPA.  Additionally, Defendant argued that it had no legal duty to warn Plaintiff as to the enforceability, or lack thereof, of his debt.  Id.

Plaintiff filed a brief in opposition to Defendant's motion on May 31, 2016.  (ECF No. 7). Defendant filed a reply brief on June 10, 2016, wherein it disputed the arguments made in Plaintiff's brief in opposition and also claimed for the first time that Plaintiff had not suffered a "concrete injury" as required for purposes of Article III standing under the United States Constitution in light of the Supreme Court's recent decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016).  (ECF No. 8).  The Court permitted Plaintiff the opportunity to file a sur-reply brief in order to respond to Defendant's new argument.  (ECF No. 9).  Plaintiff filed his sur-reply brief on August 17, 2016, claiming that he suffered a "concrete injury" when Defendant infringed upon his substantive right not to be misled and deceived under the FDCPA.  (ECF No. 11).

All issues have been fully briefed by the parties and the matter is now ripe for recommendation.

### C.    Standard of Review – Rules 12(b)(1) and 12(b)(6)

When a defendant challenges a court's subject matter jurisdiction by a facial attack, the Rule 12(b)(1) motion is reviewed under the same standard that applies to Rule 12(b)(6) motions.

See Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (noting that a facial attack contests the sufficiency of the complaint itself and that it "can occur before the moving party has filed an answer or otherwise contested the factual allegations in the complaint").[5]  Defendant's Article III standing argument challenges whether the amended complaint sufficiently pleads that Plaintiff suffered a concrete injury; that is, it asserts that the facts of the amended complaint merely amount to a "barebones technical procedural violation of the FDCPA."  Its argument does not contest the underlying facts or events set forth in the amended complaint, and it raises this argument before it has filed an answer.  Thus, this Article III standing challenge is a facial attack to the Court's subject matter jurisdiction, and will be assessed under the following standard that is also applicable to Defendant's primary argument that the amended complaint fails to state a claim.

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents in the complainant's claims are based

_____

[5]    By contrast, a factual attack on subject matter jurisdiction "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Aichele, 757 F.3d at 358.  An example of a factual attack is where the plaintiff has pleaded that diversity of citizenship is established, but the defendant can submit proof that diversity is, in fact, lacking.  Id.  Unlike a facial attack, the court will not assume that the allegations in the complaint are true when there is a factual attack, and will look beyond the pleadings to decide whether the plaintiff has actually failed to satisfy the jurisdictional prerequisites.

upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff need only allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of the claims. Connelly v. Lane Cont. Corp., 809 F.3d 780, 789 (3d Cir. 2016). When analyzing a motion to dismiss, it is appropriate to separate the factual and legal elements of the claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. Id. at 210-11; see also Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted). Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citation omitted). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### D.     Discussion

Although Defendant's contention regarding Article III standing was raised for the first time in its reply brief and is an alternative argument, the Court will address this issue first because Article III standing is a "jurisdictional matter," and without it, this Court lacks subject matter jurisdiction to address the merits of Plaintiff's claims. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).

### 1.     Article III Standing

#### i. Elements of Article III Standing

With regard to Article III standing under the United States Constitution, our Court of Appeals has explained:

> The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed. Davis v. FEC, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). To establish that stake, a plaintiff must show three elements: injury-in-fact, causation, and redressability. In the seminal standing opinion Lujan v. Defenders of Wildlife, the Supreme Court described those elements as follows:
>
>> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Aichele, 757 F.3d at 360 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, (1992)).

### ii.  Plaintiff has Alleged a Concrete Injury

In the present case, Defendant only challenges whether the amended complaint sufficiently alleges that Plaintiff has suffered a "concrete injury," a mandatory component of an "injury-in-fact."[6]  Defendant asserts that Plaintiff's claim is, at best, a "barebones technical procedural violation of the FDCPA," (ECF No. 8 at 11), and is therefore an insufficient injury for purposes of Article III standing in light of recent Supreme Court precedent.  See Spokeo, 136 S. Ct. 1540.

On May 16, 2016, the Supreme Court decided Spokeo, a case involving an alleged violation of the Fair Credit Reporting Act of 1970 ("FCRA").  136 S. Ct. at 1544.  The facts of the case were as follows: Spokeo operated a "people search engine" which routinely gathered

---

[6]  Although Defendant has not challenged whether Plaintiff has satisfied the "traceability" or "redressability" elements of Article III standing, the Court finds that the amended complaint sufficiently sets forth these elements.

7

and disseminated the personal and financial information of others to its site visitors.  Id.  The plaintiff obtained his own personal profile from Spokeo and found that much of the information gathered and disseminated in his profile was false, including that he was married, had children, was in his 50's, had a job, was relatively affluent, and held a graduate degree.  Id. at 1546.  The plaintiff then brought a class action lawsuit against Spokeo claiming that Spokeo was liable under the FCRA because it willfully failed to assure maximum accuracy of its consumer reports. Id. at 1545-46.  The Supreme Court specifically focused on one issue: whether the plaintiff's alleged injury was "concrete" as required for Article III standing, and held that for an injury to be "concrete," it must be *de facto,* i.e., "it must actually exist."  Id.  In other words, a plaintiff alleging a "bare procedural violation" of a statute, "divorced from any concrete harm," cannot satisfy the injury-in-fact requirement under Article III.  Id. at 1549.  However, the Supreme Court emphasized that "'[c]oncrete' is not … necessarily synonymous with 'tangible,'" as the Court has "confirmed in many of [its] previous cases that intangible injuries can nevertheless be concrete."  Id.

Here, Plaintiff has alleged more than a mere technical procedural violation.  Indeed, Plaintiff alleges that Defendant violated his substantive rights under the FDCPA by its conduct and communications regarding his debt.  The FDCPA expressly prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," as well as falsely representing the "character, amount, or legal status of any debt."  15 U.S.C. § 1692e, e(2)(A).  This provision provides Plaintiff with substantive rights, the violation of which "Congress has elevated to the status of a legally cognizable injury through the FDCPA," Church v. Accretive Health, Inc., __ Fed. App'x __, 2016 WL 3611543, at *3 & n.2 (11th Cir. July 6,

2016) (finding a sufficiently alleged "concrete injury" under the FDCPA where the plaintiff claimed she had not received required disclosures in communications with the debt collector).

Since Spokeo was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases, including this Court, have determined that a violation of the FDCPA produces a "concrete injury." See Dittig v. Elevate Recoveries, LLC, 2016 WL 4447818, at *2 n.1 (W.D. Pa. Aug. 24, 2016) (finding a concrete injury where plaintiff alleged defendant violated the FDCPA by sending him a collection notice containing a "settlement offer" for a time-barred debt); Irvine v. I.C. Sys., Inc., __ F.Supp.3d ___, 2016 WL 4196812, at *3 (D. Colo. July 29, 2016) (holding that plaintiff alleged a concrete injury sufficient to confer Article III standing where the defendant allegedly gave plaintiff false information regarding her debt and also allegedly supplied information to creditors regarding the debt without informing the creditors that the debt was disputed); McCamis v. Servis One, Inc., 2016 WL 4063403, at *2 (M.D. Fla. July 29, 2016) (finding a concrete injury where plaintiff's rights under the FDCPA were allegedly violated when a creditor continued to contact plaintiff in an attempt to collect a debt that was previously discharged in bankruptcy); Dickens v. GC Servs. Ltd. P'ship, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016) (finding a concrete injury where plaintiff's only alleged harm stemmed from the defendant's failure to disclose that certain of plaintiff's rights under the FDCPA had to be exercised in writing).[7]  Thus, a defendant who violates a plaintiff's rights under the FDCPA inflicts an "actual," "concrete" harm for Article III standing purposes.

Accordingly, the Court concludes that Plaintiff has sufficiently alleged a "concrete injury," and therefore Defendant's Article III standing challenge should be rejected.

---

[7]    Furthermore, in In re Nickelodeon Consumer Privacy Litig., the Court of Appeals for the Third Circuit held that a concrete injury was sufficiently alleged where the plaintiff's children's internet habits were tracked in violation of federal law.  827 F.3d 262, 273-74 (3d Cir. June 27, 2016) ("Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.").

Consequently, the Court will proceed to the merits of Plaintiff's claims and discuss whether he has stated a claim under the FDCPA.

### 2.      Failure to State a Claim

#### i.  Elements of a FDCPA Claim

To state a cause of action under the FDCPA, Plaintiff is required to allege that: "(1) [Plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir.2014) (citing Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232 (3d Cir.2005)).  In the present case, Plaintiff has credibly pleaded the first three requirements under the test and Defendant makes no attempt to argue otherwise.  Thus, the only element pertinent to this analysis is element four, i.e., whether Defendant violated a provision of the FDCPA in attempting to collect a debt from Plaintiff.

When approaching this inquiry, it is important to keep in mind that Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3d Cir.2015).  "[A]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to [its] purposes." Id. (quoting Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir.2013)).  Communications between lenders, and/or debt collectors, and debtors are viewed from the perspective of the "least sophisticated debtor" in order to protect "the gullible as well as the shrewd." Dibattista v. Buckalew, Frizell & Crevina, LLP, 574 F. App'x 107, 110 (3d Cir.2014) (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir.2006)).  "The least sophisticated debtor standard requires more than 'simply examining whether particular language would deceive or mislead a reasonable

debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Brown, 464 F.3d at 454 (citing Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000), *as amended* (Sept. 7, 2000)).  Although this standard is a relaxed one, it preserves "a quotient of reasonableness" and presumes "a basic level of understanding and willingness to read with care" on the part of the debtor in order to "prevent liability for bizarre or idiosyncratic interpretations of collection notices." Id. (quoting Quadramed Corp., 225 F.3d at 354–55).

Where, as here, the debt to be collected is time-barred, the "expiration of the statute of limitations does not invalidate the debt," but instead "renders it unenforceable." Huertas v. Galaxy Asset Management, 641 F.3d 28, 32 (3d Cir.2011).  Our Court of Appeals has stated that even where a debt is rendered unenforceable, "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt *so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts*." Id. at 32–33 (emphasis added).  Thus, in the Third Circuit, an actual threat of litigation by the debt collector is a necessary prerequisite to determining whether a violation of the FDCPA has occurred. See Dittig, 2016 WL 4447818, at *4.  "Whether a debt collector's communications threaten litigation in a manner that violates the FDCPA depends on the language of the letter." Huertas, 641 F.3d at 33.

### *ii.  Plaintiff has failed to State a Claim under the FDCPA*

Under the FDCPA, debt collectors may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. Plaintiff asserts that Defendant's use of the phrases "settlement" and "settlement offer" in a debt collection notice violated the FDCPA.  Specifically, Plaintiff claims that this conduct violated

the FDCPA by falsely representing the legal status of the debt, see § 1692e(2)(A); by making false threats to take action that could not have legally been taken, see §§ 1692e, 1692e(5); and by using false representations or deceptive means in an attempt to collect a debt, see § 1692e(10). Further, Plaintiff alleges that Defendant's act of offering a settlement of a time-barred debt without notifying the Plaintiff that the debt was time-barred violated the FDCPA pursuant to § 1692f.  Plaintiff claims that the "least sophisticated debtor" could interpret these terms to imply that the at-issue debt remains legally enforceable, even when it is not.  After a review of applicable Third Circuit precedent, as well as a review of decisions within our circuit dealing with the precise issue in this case, the Court concludes that under the circumstances, the use of the phrases "settlement" and "settlement offer" in a debt collection notice attempting to collect a time-barred debt do not violate the FDCPA.

The Court of Appeals for the Third Circuit's decision in Huertas v. Galaxy Asset Management is instructive here.  641 F.3d 28 (3d Cir. 2011).  In Huertas, the plaintiff claimed that one of the defendants had violated the FDCPA "by sending him a letter in . . . an attempt to collect on the time-barred debt."  Id. at 31.  The Court stated that the plaintiff's claim turned on whether a debt collector was permitted to attempt to collect a time-barred debt under the FDCPA.  Id.  By answering in the affirmative, the Court joined a majority of other courts to have considered the question and made clear that to violate the FDCPA, a collection notice attempting to collect a time-barred debt must actually threaten litigation.  Id.  at 32-33 (concluding that the plaintiff's FDCPA claim "hinges on whether [the collection] letter threatened litigation").

Although the collection notice at issue in Huertas attempted to collect the *entire* time-barred debt, and thus did not contain terms such as "settlement" or "settlement offer," this Court sees little reason to depart from its logical rule that, absent an initiation or actual threat of

litigation, the collection of a time-barred debt does not violate the FDCPA.[8]  When that rule is applied here, it is apparent that Defendant's collection notice to Plaintiff did not violate the FDCPA.  Even the "least sophisticated debtor" could not interpret the phrases "settlement" and "settlement offer" in the letter that was sent to Plaintiff to actually threaten litigation.  See Buchanan v. Northland Group, Inc., 776 F.3d 393 (6th Cir. 2015) ("Nor does a 'settlement offer' with respect to a time-barred debt by itself amount to a threat of litigation.  Even an unsophisticated consumer could not reasonably draw such an inference, as the dissent and we both agree.") (citing Huertas, 641 F.3d at 33 and Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001)).[9]

This conclusion is consistent with this Court's recent decision regarding this issue in Dittig v. Elevate Recoveries, LLC, which contained nearly identical facts.  In Dittig, the defendant sent the plaintiff a collection letter offering to settle a time-barred debt.  Dittig, 2016 WL 4447818, at *1.  In addition to the settlement offer, the letter also stated that the debt at issue had been assigned to a debt collector for action, it contained a privacy notice and other mandatory statutory language, and indicated that if the plaintiff did not dispute the validity of the

---

[8]   Indeed, the Court notes that the letter in Huertas requested that the plaintiff call the defendant to "resolve" the issue.  641 F.3d at 33.  Recently in Tatis v. Allied Interstate, LLC, the District Court for the District of New Jersey observed that the definitions of the words "settle" and "resolve" are "strikingly similar."  2016 WL 5660431, *9 (D.N.J. Sept. 26, 2016) (comparing The American Heritage Dictionary of the English Language 1593 (4th ed. 2009) (defining "settle" as "[t]o conclude (a dispute, for example) by a final decision") with id. at 1484 (defining "resolve" as "[t]o bring to a usually successful conclusion")).  Thus, Tatis determined that it did not appear "that there will be an appreciable difference to the least sophisticated debtor if she receives a dunning letter offering to 'resolve' a debt as opposed to one that offers to 'settle' the debt."  Id.  This Court agrees, and concludes that the fact that the letter in Huertas did not contain the words "settle" or "settlement offer" is not a sufficient basis to distinguish its holding when analyzing the facts of this case.

[9]   Although Buchanan recognized that a collector's use of the term "settlement offer" in a letter did not threaten litigation, it nevertheless found that the plaintiff stated a claim under the FDCPA.  Thus, as discussed infra at note 11, to the extent that the result reached in Buchanan conflicts with the analysis set forth in Huertas, the Court will apply Huertas.

debt within a reasonable number of days, the debt collector would assume that the debt was valid.  Id. at *3.  The plaintiff claimed that, by offering a settlement of a time-barred debt, the defendant had committed deceptive and abusive debt collection practices in violation of the FDCPA.  Id. at *3.  This Court disagreed, finding that "district courts within the Third Circuit have predominantly held that an offer of settlement, without more, is insufficient to state a claim under the FDCPA."  Id. at *4 (citing Forbes v. Capital Mgmt. Servs., L.P., 2016 WL 2617892, at *1 n.1 (E.D. Pa. Feb. 1, 2016) (concluding that the use of the word "settlement" in a collection letter did not "threaten litigation in a manner that would violate the FDCPA"); Johns v. Northland Grp., Inc., 76 F.Supp.3d 590, 596 (E.D. Pa. 2014) (concluding that the defendant's use of the word "settlement" did not threaten litigation)).[10]  The Court elaborated that "[u]nder Huertas, our task is to consider whether a debt collection attempt threatens litigation in a manner that would deceive or mislead the least sophisticated debtor.  The mere use of the word 'settlement' simply does not represent such a threat."[11]  Dittig, at *4.  The Court finds the

---

[10]  The Court acknowledges that other district courts within this Circuit have reached the opposite conclusion.  See, e.g., Filgueiras v. Portfolio Recovery Associates, LLC, 2016 WL 1626958, at *7 (D.N.J. Apr. 25, 2016) (denying defendant's motion to dismiss because "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable") (citing McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1020 (7th Cir. 2014)); Funderburk, Jr. v. AFNI, Inc. et al., No. 14-6361, Order at ECF No. 21 at 2 (E.D. Pa. Mar. 18, 2015) (denying defendant's motion for judgment on the pleadings because a collection letter using the phrase "settlement offer" "could plausibly mislead or deceive the least sophisticated consumer into believing that the time-barred debt was legally enforceable").  Nonetheless, as this court recently ruled in Dittig, the recommended disposition herein is more consistent with the requirement set forth in Huertas that there actually be a threat of litigation under the FDCPA.

[11]  Plaintiff urges the Court to apply the reasoning employed by the Sixth Circuit in Buchanan v. Northland Grp., Inc., 776 F.3d 393 (6th Cir. 2015), and the Seventh Circuit in McMahon v. LVNV Funding, LLC, 744 F.3d 1010 (7th Cir. 2014), both of which dealt with the precise issue in this case. However, the requirement in the Third Circuit that a collection notice threaten legal action to state a claim under the FDCPA is not observed in the Sixth or Seventh Circuits.  See McMahon, 744 F.3d at 1020 ("[A] threat [of litigation] is not a necessary element of a [FDCPA] claim. We recognize that this interpretation conflicts with that of the Eighth and Third Circuits."); Buchanan, 776 F.3d at 397, 399-400 (noting that the Seventh Circuit's approach in McMahon is similar to its own approach and holding that the plaintiff stated a claim under the FDCPA notwithstanding its express acknowledgment that a

reasoning set forth in <u>Dittig</u> to be persuasive and consistent with <u>Huertas</u>.  Accordingly, the Court recommends that Plaintiff's amended complaint be dismissed for failure to state a claim under §§ 1692e and 1692f of the FDCPA.[12]

### 3.     Leave to Amend

Plaintiff alternatively argues that, in the event dismissal of the amended complaint is warranted, he should be granted leave to file an amended pleading.  (ECF No. 11 at 15). However, the Court is not required to allow Plaintiff to amend his complaint, to the extent that amendment would be futile.  In this context, "futility" means that, when applying the standard that is applicable to Rule 12(b)(6) motions, the complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, any proposed amendment of the amended complaint by Plaintiff would be futile. In his amended complaint, Plaintiff alleges that Defendant violated the FDCPA solely through its use of the phrases "settlement" and "settlement offer" in its collection notice, a theory which this Court has found to be deficient as a matter law.  Because the facts of this case are entirely based

---

"settlement offer" with respect to a time-barred debt does not amount to a threat of litigation).  Moreover, the Fifth Circuit recently recognized that the Third and Eighth Circuits are in "an apparent conflict" with the Sixth and Seventh Circuits as to whether there needs to be a threat of litigation to state a FDCPA claim under the circumstances.  <u>See</u> <u>Daugherty v. Convergent Outsourcing, Inc.</u>, __ F.3d __, 2016 WL 4709712, *3-5 (5th Cir. Sept. 8, 2016) (rejecting <u>Huertas</u> and the Eighth Circuit's opinion in <u>Freyermuth</u>, and "agree[ing] with the Seventh Circuit's interpretation of the FDCPA in <u>McMahon</u>, and with the Sixth Circuit's opinion in <u>Buchanan</u> insofar as it is consistent with <u>McMahon</u>").  In the Third Circuit, <u>Huertas</u> is binding precedent.  Therefore, this Court is obligated to apply it.  As such, Plaintiff's invitation to have the Court apply conflicting non-binding decisions from other federal appellate courts should be rejected.

[12]    Because Plaintiff asserts that Defendant is liable under § 1692f based solely on the same conduct that Plaintiff claims violated § 1692e, his claim under § 1692f should be dismissed.  <u>Tatis</u>, 2016 WL 5660431, *9; <u>see also</u> <u>Cohen v. Dynamic Recovery Solutions</u>, 2016 WL 4035433, *5 (D.N.J. Jul. 26, 2016) ("Courts routinely dismiss § 1692f claims when a plaintiff does not identify any misconduct beyond that which he asserts violates other provisions of the FDCPA.") (citations omitted); <u>Beard v. Ocwen Loan Servicing, LLC</u>, 2016 WL 344300, *5 (M.D. Pa. 2016) (explaining that § 1692f is a catchall provision and that if a specific section of the FDCPA applies, then the catchall does not).

upon this letter that Defendant mailed to Plaintiff, there are no additional facts which Plaintiff could allege that would cure his existing legal deficiencies.  Thus, any proposed amendment by Plaintiff would be futile, and Plaintiff should be denied the opportunity to file a second amended complaint.

### E.        Conclusion

It is respectfully recommended that Defendant Allied's motion to dismiss, (ECF No. 4), be granted and that the amended complaint be dismissed with prejudice.  In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and this District's Local Rules for Magistrates Judges, the parties may file written Objections to this Report and Recommendation on or before **November 1, 2016**.  Unless modified by the District Judge, responses to the Objections are due fourteen (14) days after the Objections are filed.  Fed.R.Civ.P. 72(b)(2); LCvR 72D.2.  Failure to file Objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated:  October 18, 2016.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     **The Honorable Mark R. Hornak**
        (*via CM-ECF*)

        **All Counsel of Record**
        (*via CM-ECF*)

16